Judgment rendered March 3, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,703-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                      Plaintiff-Appellee

versus

$3,136 IN US CURRENCY                          Defendants-Appellants
AND RORY K. GATES

* * * * *

Appealed from the
Eighth Judicial District Court for the
Parish of Winn, Louisiana
Trial Court No. 45488

Honorable Don C. Burns (*Ad Hoc*), Judge

* * * * *

JAMES E. CALHOUN                                 Counsel for Appellants

RORY K. GATES                                       In Proper Person,
                                                            Appellants

STEVEN D. CREWS                                  Counsel for Appellee
COLE B. SMITH
Assistant District Attorneys

* * * * *

Before MOORE, COX, and BLEICH (*Pro Tempore*), JJ.

**COX, J.**

The case arises out of the Eighth JDC, Winn Parish, Louisiana. Rory Gates was arrested on drug charges. Gates' personal property was seized at the time of his arrest. The seized property in dispute is $3,136 in cash. The State petitioned to forfeit the cash in this civil proceeding. The trial court granted the State's petition for forfeiture, and Gates now appeals. We affirm the trial court's granting of the forfeiture.

## FACTS

*Criminal Proceeding*

Gates was arrested on July 11, 2016, for possession of a firearm by a convicted felon; possession of methamphetamine with intent to distribute; possession of schedule I, II (3 counts), IV controlled dangerous substances with intent to distribute; and, possession of drug paraphernalia. When he was arrested, $3,136 in cash, as well as other property, was seized. On February 27, 2017, Gates entered a plea agreement, in which he pled guilty to possession of a schedule II controlled dangerous substance (methamphetamine) with intent to distribute in exchange for a 25-year sentence.

At the guilty plea hearing, Gates' counsel told the trial court that Gates had property seized and the State was not opposed to returning it. The trial court asked the sheriff's office if it had a receipt of the items because Gates was not aware of all of the items seized. The trial court and State agreed that this did not include any firearms. The State then stated "and, if the matter is not the subject of a criminal investigation, or identified with some victim in a crime, uh, we have no problem." Gates stated, "Uh, there's a bag with laptops, I had four laptops, my watches, and my niece's watches,

I had my walkie-talkies and my money that was taken." The trial court responded, "[W]e're gonna order that - - that your property be returned to you or your designated party, which would be your sister, Mr. Gates." The trial court then took Mr. Gates' guilty plea and sentenced him according to the 25-year plea agreement.

On March 1, 2017, the State requested that the cash be seized. Gates was not present at the time of the hearing. The trial court asked if Gates had been notified, and the State noted that Gates had no objection and had already been told that the cash may be seized. The trial court then ordered that the cash be forfeited. Sometime after this hearing, but before the next hearing in July of 2017, the State distributed the cash to various agencies.

On July 19, 2017, Gates filed a motion to rule the forfeiture illegal. Gates was represented by counsel at this hearing. The trial court reviewed the minutes from the previous hearing and noted that neither Gates nor his attorney was present. The trial court ruled that the cash seized was not agreed to by Gates in the initial sentencing and noted that Gates was not present in the previous hearing to agree to the forfeiture. The trial court ordered the forfeiture of the cash be voided and all cash seized during the arrest be returned to Gates.

*Civil Proceeding*

After the trial court voided the forfeiture in the criminal proceeding, the State filed a notice of pending forfeiture in civil court against Gates on September 25, 2017. A warrant of seizure for forfeiture was signed by the district court on the same day. The property to be seized was cash in the amount of $3,136. On November 27, 2017, Gates responded pro se with an "affidavit" stating that on "February 27, 2017, [he] was sentenced to serve

2

25 years for possession of CDS[.] As a stipulation and condition of his plea bargain agreement, he was awarded all property seized except any firearm." He argued that a forfeiture would breach the plea agreement and be illegal. On November 29, 2017, he filed a motion to quash stating the trial court has already ruled twice that the forfeiture is illegal; his plea bargain became final on March 27, 2017, and the Winn Parish Sheriff Department and State can no longer file the forfeiture; and, a forfeiture would make his plea bargain null due to the State not complying with a ruling to return all property.

On February 8, 2018, the State filed an application for judgment of forfeiture when claim has been filed together with request to strike claim and opposition to motion to quash.[1] The State argued that it was not properly served by Gates. It also argued that Gates' "affidavit" should be stricken because it was not notarized.

A hearing was held on February 21, 2018, for both the civil and criminal proceedings, and the trial court explained to Gates that because the court received some of the forfeited money, the court had to recuse itself from hearing the civil case on whether the forfeiture overturns the ruling in criminal court that the money be returned. The Louisiana Supreme Court appointed Judge Burns as an *ad hoc* judge to hear the civil proceeding.

On May 15, 2018, a hearing was held to determine whether or not Gates' filings "constitute a valid claim." The State argued that Gates' response was untimely because it was not filed within 30 days of the notice of pending forfeiture. Gates argued that he actually had around $4,300 when he was arrested. He stated that had three jobs and the money was for a

---

[1] This is the State's title to their filing in this proceeding.

3

vehicle that he and his sister were going to buy on the day he was arrested. He claimed the money was not related to drugs. The trial court responded to Gates that those allegations were not set forth in his reply to the forfeiture proceedings. The trial court noted that this suit presents a "very strange" fact scenario. It stated, "If… this gentleman were - - was not incarcerated, I would be inclined to say that, uh, his claim was not timely filed." However, because of the fact that he was incarcerated and that effect on his ability to timely respond, the trial court stated, "I'm gonna recognize this as a timely filed response. I am eminently aware that there's - - there's some holes in that, but… I think in an effort to be, uh, fair, I'm gonna recognize that." At that hearing, the trial court appointed legal counsel for Gates.

The State filed a petition for forfeiture on June 18, 2018. On January 16, 2019, Gates filed an answer to petition for forfeiture in rem action and motion for summary judgment. He asserted that the transcript of his guilty plea will show that one of the terms of that plea was that the property would be returned to his sister.

The forfeiture proceeding was held on January 23, 2019. At that time, the trial court denied Gates' motion for summary judgment. Officer Danny Green of the Department of Public Safety and Corrections testified that he and other officers went to Gates' home to arrest him on several active warrants. Officer Green stated that he had spoken with Gates earlier about being behind on his parole fees so he was meeting Gates to collect the fees. He stated he thought this was a good opportunity to serve the warrants. Officer Green stated that they found a large amount of cash on Gates as well as narcotics in the bed where Gates was lying. When asked if it is common

4

for individuals who are distributing illegal substances to be in possession of large sums of cash, he answered in the affirmative.

Deputy Kelly Fannin of the Winn Parish Sheriff's Office testified that he was involved in the investigation and arrest of Gates. He stated that the Sheriff's Office had a confidential informant set up a methamphetamine purchase from Gates. He stated the transaction was videoed and recorded, which he viewed as part of his investigation. He testified that when Gates was arrested, the only items he personally seized from Gates were the narcotics. He agreed that it is common for individuals who are distributing illegal substances to be in possession of large amounts of cash.

Gates did not call any witnesses at the forfeiture proceeding. He introduced all the minutes from his criminal proceedings and his guilty plea transcript from February 27, 2017. Both parties offered argument as to whether the money was part of a criminal activity and, therefore, subject to forfeiture.

The trial court found that the State "met their burden of proof to show… probable cause that the cash that is the subject of this forfeiture was involved in a criminal activity and thus subject to forfeiture." The trial court stated that the guilty plea transcript was not enough to set aside the forfeiture proceedings. The trial court granted the State's petition for forfeiture of the $3,136 in cash. Costs of the proceedings were assessed to Gates. Gates now appeals.

## DISCUSSION

Gates argues the forfeiture of his property was improperly granted because the State agreed to return his property at his guilty plea hearing. The State argues that the forfeiture proceeding is a separate and distinct

5

proceeding from the criminal proceedings and that they met their initial

burden to prove entitlement to the forfeiture.

La. Const. art. I, § 4(D) provides authority for civil forfeiture

proceedings related to certain drug-related criminal matters:

> The following property may be forfeited and disposed of in a
> civil proceeding, as provided by law: contraband drugs;
> property derived in whole or in part from contraband drugs;
> property used in the distribution, transfer, sale, felony
> possession, manufacture, or transportation of contraband drugs;
> property furnished or intended to be furnished in exchange for
> contraband drugs; property used or intended to be used to
> facilitate any of the above conduct; or other property because
> the above-described property has been rendered unavailable.

Through the Seizure and Controlled Dangerous Substances Property

Forfeiture Act of 1989 ("Act"), the Louisiana Legislature established a civil

system of expressly delineated procedures, which allows the State to seize

and have forfeited property that is related to, is a proceed from, facilitates, or

is itself a violation of the Uniform Controlled Dangerous Substances Law.

La. R.S. 40:2601, *et seq.*; *State v. 2003 Infiniti G35 VIN No.*

*JNKCV51E93MO24167*, 2009-1193 (La. 1/20/10), 27 So. 3d 824. La. R.S.

40:2603 provides that any of the following conduct gives rise to a forfeiture:

> (1) An act or omission punishable by confinement for more
> than one year under R.S. 40:961 et seq. whether or not there is a
> prosecution or conviction related to the act or omission.
> …
>
> (3) Any act or omission committed in furtherance of any
> violation of R.S. 40:961 et seq. which is punishable by
> confinement with or without hard labor, including any inchoate
> or preparatory offense, regardless of whether there is a
> prosecution or conviction related to the act or omission.

La. R.S. 40:2604 lists the following as subject to seizure and

forfeiture:

> (1) All controlled substances, raw materials, or controlled
>     substance analogues that have been manufactured,

6

distributed, dispensed, possessed, or acquired in violation of R.S. 40:961 et seq.

(2) All property that is either:

(a) Furnished or intended to be furnished by any person in exchange for a controlled substance in violation of R.S. 40:961 et seq.

(b) Used or intended to be used in any manner to facilitate conduct giving rise to forfeiture, provided that a conveyance subject to forfeiture solely in connection with conduct in violation of R.S. 40:961 et seq. may be forfeited only pursuant to the provisions of this Chapter.

**(3) Proceeds of any conduct giving rise to forfeiture.**

(4) All weapons possessed, used, or available for use in any manner to facilitate conduct giving rise to forfeiture.

(5) Any interest or security in, claim against, or property or contractual right of any kind affording a source of control over any enterprise that a person has established, operated, controlled, conducted, or participated in the conduct of through conduct giving rise to forfeiture.

(emphasis added.)

In a civil forfeiture proceeding, the trial court's findings of fact are subject to the manifest error/clearly wrong standard of appellate review. *State v. Birdwell*, 47,126 (La. App. 2 Cir. 5/16/12), 92 So. 3d 1107. The State has the initial burden of showing the existence of probable cause for forfeiture of property under the provisions of the Act. *State v. $2,540.00 U.S. Currency Seized from Foster*, 47,127 (La. App. 2 Cir. 5/16/12), 92 So. 3d 1153. The evidence admissible for meeting the State's burden can be the same as that admissible in determining probable cause at a preliminary hearing or by a judge in issuing a search warrant. La. R.S. 40:2611(F); *Id.* Probable cause for forfeiture is satisfied when the totality of the facts and circumstances provides reasonable ground for believing the property in question is connected to illegal drug trafficking. *State v. $144,320.00*, 2012-

7

0466 (La. 12/4/12), 105 So. 3d 694. The Act does not require proof of a specific drug transaction. *Id.*

It is unnecessary for the State to trace the property to a particular drug transaction—it is the totality of the circumstances that leads to a finding of probable cause. *State v. 2,540.00 U.S. Currency, supra.* The fact that money or a negotiable instrument was found in proximity to contraband or an instrumentality of conduct giving rise to forfeiture shall give rise to the permissible inference that the money or negotiable instrument was the proceeds of conduct giving rise to forfeiture or was used or intended to be used to facilitate the conduct. La. R.S. 40:2611(G).

If the State meets this burden, the claimant must show by a preponderance of the evidence that his or her interest in the property is not subject to forfeiture. *State v. $2,540.00 U.S. Currency, supra.*

The State had the initial burden to prove the existence of probable cause for the forfeiture of the cash. The State had to prove that the cash fell into one of the categories listed in La. R.S. 40:2604—specifically, proceeds derived from or related to methamphetamine.

At the forfeiture hearing, the State offered the testimony of two law enforcement officers who were present at the time of Gates' arrest. Both officers testified that Gates was found in a bed with both drugs and money under the covers. Both officers agreed that it is common for individuals who are distributing illegal substances to be in possession of large amounts of cash. Deputy Fannin's affidavit was attached to the warrant of seizure stating he was present at the time of Gates' arrest and seizure of property. He stated drugs were observed in and around Gates' residence and in Gates' possession. We agree with the trial court that the State met its initial burden

8

of showing the existence of probable cause. The totality of the circumstances in this case provided reasonable ground to believe the cash was connected to the methamphetamine.

The burden then shifted to Gates to show by a preponderance of the evidence that his interest in the cash is not subject to forfeiture. We agree with the trial court that Gates failed to meet his burden. Gates did not offer any testimony showing the cash was not subject to forfeiture or unrelated to the methamphetamine. The only evidence offered by Gates were the minutes from all of his criminal proceedings and the transcript of his guilty plea. The crux of Gates' argument was that the State agreed to give the cash back and the trial court ordered it to be given back at the guilty plea hearing. Gates did not submit evidence of a written plea agreement. The pertinent part of the guilty plea transcript is as follows:

> BY MR. CREWS: - - If the - - No firearm. And, if the matter is not the subject of a criminal investigation, or identified with some victim in a crime, uh, we have no problem. But, if it - - if it's appears to be his - -
>
> BY THE COURT: Okay.
>
> BY MR. CREWS: - - property, obviously, we got to return it.
>
> BY THE COURT: We will try to… return Mr. Gates's… property as long as there's not any gar holes involved in - - in doing that.

The trial court then ordered that Gates' property be returned to him or his designated party.

Gates' case is distinguishable from the instances in which there was a written guilty plea clearly stating which property would be returned. In *State v. Fifteen Thousand Four Hundred Thirty-One Dollars & Other Prop.*, 95-1334 (La. App. 3 Cir. 3/6/96), 670 So. 2d 693, the written plea agreement

9

was introduced and the court found the contract to be "simple, straightforward and not susceptible of more than one meaning." In that case, the plea agreement specified that the defendant agreed to the forfeiture of all items appearing in the lab report only. The State sought to forfeit cash, vehicles, and scales, which were not listed in the lab report. That court found that the State "agreed to forego the seizure of the cash, vehicles, and scales in exchange for a guilty plea."

Gates' plea agreement did not include a specific list of items that were seized or would be returned. Gates's counsel stated, "We don't have a receipt, Judge" and asked the trial court to get a receipt from the sheriff's office. At that point, the State clarified that firearms and property that is identified with a crime would not be returned. Again, there is not a numerated list of specific items labeled "identified with a crime." Additionally, the trial court stated the property would be returned as long as there were no "gar holes" (or problems) in doing so. For these reasons, the evidence submitted by Gates does not show that his interest in the cash is not subject to forfeiture.

Based on our manifest error review of the record, the State met its initial burden, but Gates failed to meet his burden. Therefore, the forfeiture was proper under the Act. We affirm the forfeiture of Gates' $3,136.00. Because we have affirmed the forfeiture of the cash, we pretermit discussion of Gates' final two assignments error.

## CONCLUSION

For the reasons set forth above, we affirm the trial court's granting of the forfeiture. Costs associated with this appeal are cast on Gates.

**AFFIRMED.**

10